# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1600
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Elza D. Terry, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 14, 2002

Filed: September 30, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Elza D. Terry appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri following his conditional guilty plea to each count of a three-count indictment. The counts charged: (1) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4); (2) production of child pornography in violation of 18 U.S.C. § 2251(a); and (3) criminal forfeiture of the

_____

[1] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

equipment used to produce child pornography under 18 U.S.C. § 2253(a)(3). The district court sentenced Terry to 60 months imprisonment on count one and to 240 months imprisonment on count two. Each sentence was ordered to run concurrently with the other. In addition, the district court ordered both of these sentences to run consecutively to Terry's undischarged state sentences. For reversal, Terry argues that the district court erred in denying the motion to suppress evidence and the supplemental motion to suppress his statements. He also argues that the district court erred in ordering his federal sentences to run consecutively to his undischarged state sentences. For the reasons discussed below, we affirm.

I.

Greg Finkle owns a repossession and collections business in Bates County, Missouri. In the course of doing business, Finkle obtained a copy of repossession documents for Terry's 1994 Ford Ranger pickup truck. In addition, he received information that Terry was staying at a home in Grandview, Jackson County, Missouri and/or he was residing at a trailer home in Warsaw, Benton County, Missouri. On December 12, 2000, Finkle repossessed Terry's truck, which was parked next to the Warsaw trailer home.

During a routine inventory of the truck at his business address, Finkle discovered photograph albums, a stun gun, a knife, and a camcorder with a videotape inside. Finkle looked at the contents of the albums and viewed a portion of the videotape. Believing that the albums contained pornography and that the videotape depicted the stalking and inappropriate touching of a young girl in a retail store, Finkle contacted the Sheriff's Department.

Finkle informed Deputy Martin of the Bates County Sheriff's Department about the items he found within Terry's truck. Finkle also told Martin that he thought Terry was living with a family who resided at the Grandview home. On December

2

13, 2000, another Bates County officer collected the albums, camcorder and videotape from Finkle.

Upon reviewing the collected items on December 14, 2000, Martin determined that the albums contained cutouts of clothed young children with sexually explicit captions next to them and magazine photographs of nude girls in their late teens. He also found that the videotape showed different girls, while they were in a retail store, being followed, engaged in conversation and touched on the breasts or buttocks by the person using the camcorder. One of the girls appeared to be approximately eight years old and another girl gave enough identifying information on the videotape for police officers to locate her and to confirm her age as a minor.

As the investigation on Terry for sexual misconduct and/or abuse of minors proceeded, Martin arranged for other law enforcement personnel from several counties to meet at the Clinton Police Department to determine in what county or counties the activities occurred. Grandview Detective Stark and Benton County Sergeant Weeks participated in the meeting. In addition, a retail representative participated in a portion of the meeting to help identify the location where the videotape was recorded. The group concluded that some of the videotape was recorded at a Wal-Mart in Clinton, Henry County, Missouri.

During the multi-county investigation, Stark learned that Terry previously had been arrested and charged for sexual misconduct similar to that depicted on the videotape. He also obtained information directly from Finkle that Terry had been staying with a couple and their minor children at the Grandview home. Further, Grandview Detective Ellis, after placing a telephone call to the Grandview home on December 15, 2000, told Stark he recognized the voice of the person who answered the telephone as being the same as the voice of the person who made the videotape. Based upon his overall investigation, Stark believed Terry lived at the Grandview home for four or five months but was in the process of moving back to the

3

Warsaw trailer home. Using the information he obtained, Stark completed an affidavit/application for a warrant to search the Grandview home. After signing the affidavit/application, Stark gave it to the assistant prosecuting attorney, who also signed it. An Associate Circuit Judge reviewed the affidavit/application and issued a search warrant for the Grandview home on December 18, 2000.

The Grandview detectives conveyed to Weeks the information that they had acquired during their initial investigation. As part of his own investigation, Weeks, on December 15, 2000, spoke to a woman who managed the trailer park where the Warsaw trailer home was located. She told Weeks that she saw Terry with young children and toys around the Warsaw trailer home over the past summer. Using the information he received from the detectives of the Grandview Police Department and the additional information he acquired, Weeks prepared an affidavit and contacted the prosecutor. The Benton County prosecutor completed an application for a warrant to search the Warsaw trailer home. An Associate Circuit Judge reviewed the affidavit and application, and he issued a search warrant on December 19, 2000.

Both warrants authorized a search for motion pictures, videotapes, photographs, computer-generated photographs, magazines, diaries, notebooks or other records that involved minors in sexually explicit conduct or adults engaged in sexual conduct. Law enforcement officials executed the warrants at the two residences on the morning of December 19, 2000. Terry was present at the Grandview home.

The Grandview officers arrested Terry,[2] conducted a search pursuant to the

---

[2] Terry was placed under arrest due to an investigative stop and hold order issued by the Clinton Police Department. The stop and hold order was issued because Clinton officials, after identifying a child of minor age in the videotape and the location of the Wal-Mart where the improper touching occurred, were in the process of filing charges against Terry under Mo. Rev. Stat. § 566.090.

warrant for the Grandview home and, after Terry consented, searched his van.  The search of the Grandview home uncovered a lengthy tape of young children doing gymnastics, and the search of the van revealed items of children's clothing.  Neither search uncovered evidence of sexual misconduct or evidence of child or adult pornography.  The Grandview officers transported Terry to the Grandview Police Department.

After Stark and Ellis returned to the Grandview Police Department, Stark contacted Clinton law enforcement officials.  Those officials gave Stark permission to interview Terry pursuant to the investigative stop and hold order.  At that time, the search of the Warsaw trailer home was still in progress.

Terry received his Miranda warnings and signed a written waiver of his rights before speaking with officers.  During the interview conducted by Stark and Ellis at the Grandview Police Department, Terry admitted that he had sexual fantasies about young children and stated that he had masturbated while watching the videotape found in his truck.  When further questioned about this videotape, Terry admitted recording the children in Wal-Mart.

After being told by the Grandview officers about the on-going search of the Warsaw trailer home, Terry described where sexually explicit items, including videotapes, could be found.  He also described what was recorded on some of the videotapes.  Although Terry initially denied certain sexual misconduct, he confessed after being confronted with Victim 1's allegations.[3]  He also acknowledged during the interview that he babysat some neighbor children and that he performed sexual acts on them while they slept.  Terry, then, drew a sketch of the Warsaw trailer home and

_____

[3] Victim 1 lived at the Grandview home.  Sometime during the interview, Victim 1 contacted the Grandview Police Department.  She told Ellis that Terry had sex with her numerous times while she was a minor and that she believed she had seen a videotape of Terry stroking the vagina of a young former neighbor girl.

explained by using the sketch where the videotapes depicting his sexual misconduct could be found.

The Benton County officers searching the Warsaw trailer home found four videotapes depicting Terry engaged in sexual conduct with minor children. They also found 418 videotapes, books, magazines, teen magazines, and 8 mm tape recordings.[4] No one from the Grandview Police Department contacted the Benton County officers before they finished their search of the Warsaw trailer home. The Benton County officers had already obtained the videotapes when they learned from the Grandview officers that Terry disclosed where the videotapes could be found.

Terry filed a motion to suppress physical evidence seized by law enforcement officials during the searches of his two residences.[5] After the evidentiary hearing on the original motion to suppress, Terry filed a supplemental motion to suppress all statements made during his custodial interrogation by members of the Grandview Police Department. The district court adopted the report and recommendation of the magistrate[6] and issued an order denying Terry's motion to suppress evidence and supplemental motion to suppress statements. Terry, subsequently, entered a conditional guilty plea.

---

[4] Because the Benton County officers also found a quantity of marijuana in the trailer home, Terry was charged and convicted in the Circuit Court of Benton County, case number CR30R010001306.

[5] Although the legality of both searches was litigated before the district court, Terry appeals only the search and seizure that occurred at the Warsaw trailer home because no evidence or contraband was located or seized pursuant to the search of the Grandview home. Thus, Terry asserts that the legality of the search conducted at the Grandview home is moot because there was nothing for the district court to suppress.

[6] The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

On February 12, 2002, Terry appeared for his federal sentencing. The district court sentenced him to 60 months imprisonment on count one. As to count two, the district court, after determining the presumptive range of punishment to be between 188 and 235 months, granted the government's motion to depart upward and sentenced Terry to 240 months, the statutory maximum. The district court ordered these federal sentences to run concurrently with each other and, over objection, ordered Terry's federal sentences to run consecutively to his undischarged state sentences. The district court concluded that it was not bound by U.S.S.G. § 5G1.3(b), which requires sentences to run concurrently if certain conditions are met. Instead, the district court found U.S.S.G. § 5G1.3(c) applicable and ordered Terry's sentences to run consecutively to the undischarged state sentences.

## II.

Although we review factual determinations supporting the district court's denial of the motion to suppress only for clear error, we review determinations of probable cause de novo. United States v. Green, 275 F.3d 694, 698 (8th Cir. 2001). Our role is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant. See United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). When the affidavit supporting the search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched, probable cause exists. Id. Additionally, "probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999) (citations omitted).

Terry does not assert on appeal that the affidavit contained false statements made knowingly or with reckless disregard for the truth in violation of Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Rather, Terry asserts that the affidavit in support of the Warsaw trailer home search warrant failed to establish probable cause

because it did not contain sufficient information. Specifically, Terry contends that Weeks' affidavit did not contain any facts or information indicating that the Warsaw trailer home contained evidence of criminal activity.

We disagree. In the affidavit, Weeks: (1) described the repossession of Terry's truck and the discovery of the contents within it; (2) recounted portions of the albums and aspects of the videotape found in Terry's truck; (3) indicated that a Grandview detective recognized the voice of the person who answered the phone at the Grandview home as being the same as the voice of the person who created the videotape; (4) stated that the manager of the trailer park saw Terry with young children and toys around the Warsaw trailer home over the past summer; (5) averred that, in his experience and training in the investigation and prosecution of child sexual abuse cases, individuals who engage in such activities tend to keep extensive libraries of pornography, including possibly child pornography; and (6) asserted that evidence of sexual crimes involving minors would likely be found in the Warsaw trailer home. We find that the facts and conclusions set forth in the affidavit are legally sufficient to establish probable cause for the issuance of the search warrant. Viewing the affidavit in a common sense manner, we conclude that the issuing judge had a substantial basis to believe that the items sought in the warrant would be found at the Warsaw trailer home.

Even if the warrant application were deficient, we find the search to be lawful under the good faith exception of United States v. Leon, 468 U.S. 897 (1984). In Leon, the Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. Id. at 922-23. "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'"

United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (quoting Leon, 468 U.S. at 926).

We, like the magistrate and district court judge, find that the issuing judge remained neutral and detached when making his probable cause determination. No evidence suggests that the issuing judge "wholly abandoned his judicial role," especially in light of the previously stated reasons supporting our probable cause determination. See Leon, 468 U.S. at 923 (stating that suppression remains an appropriate remedy when the issuing judge wholly abandons his judicial role). In addition, because the Benton County officers executing the search knew that the Benton County prosecutor and the issuing judge found the affidavit sufficient, we find that the Benton County officers' reliance upon the issued search warrant was reasonable. Accordingly, we hold that the district court correctly denied Terry's motion to suppress evidence.

III.

Terry also argues that the district court erred in denying the supplemental motion to suppress his incriminating statements made to Grandview officers following his arrest on December 19, 2000. In support of his argument, Terry alleges that he was illegally arrested without an arrest warrant at the Grandview home because the investigative stop and hold order was not sufficient and the Grandview officers lacked probable cause. See United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) ("Probable cause to conduct a warrantless arrest exists when at the moment of arrest police have knowledge of facts and circumstances . . . sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested."). In this context, we also review the district court's findings of fact for clear error and its determinations of probable cause de novo. United States v. Jones, 275 F.3d 673, 678 (8th Cir. 2001).

The district court found that, apart from the investigative stop and hold order issued by the Clinton Police Department, the arresting officers had probable cause to arrest Terry for sexual misconduct under Missouri statutes. We agree that probable cause existed at the time of Terry's arrest. The videotape found in Terry's truck clearly depicted different girls, while they were in a retail store, being followed and touched on the breasts or buttocks by the person using the camcorder. Law enforcement officials, during their initial investigation, identified one of the victims on the videotape and the location where the inappropriate touching occurred. As a result, a Clinton detective, prior to Terry's arrest on December 19, 2000, requested that the Henry County prosecutor consider filing charges against Terry for first degree sexual misconduct under section 566.090. In addition, before arresting Terry, Stark viewed the videotape found in Terry's truck, ascertained from Ellis that Terry's voice was the same as the voice of the person who made the videotape and learned that Terry previously had been arrested for similar misconduct. Given these facts and circumstances, it is clear that, even if the investigative stop and hold order was an insufficient basis to arrest Terry, probable cause to make an arrest existed at the time Terry was arrested.

Therefore, Terry's post-arrest statements need not be suppressed as the fruit of an illegal arrest. The circumstances surrounding the December 19, 2000 interview compel the conclusion that Terry knowingly, voluntarily and intelligently waived his rights and confessed. Similarly, the conditions attending Terry's arrest do not suggest that law enforcement officials in any way compelled Terry to confess. Accordingly, we hold that the district court correctly denied Terry's supplemental motion to suppress his statements.

IV.

Finally, we must address whether the district court erred in ordering Terry's federal sentences to run consecutively to Terry's state sentences. Prior to his federal

10

sentencing, Terry was convicted and sentenced in the Circuit Court of Cass County, case numbers CR301-109FX and CR301-153FX, and in the Circuit Court of Benton County, case number CR30R010001306. In case number CR301-109FX, Terry pleaded guilty to one count of felony first degree statutory rape (1), five counts of felony first degree statutory sodomy (2-6), two counts of felony promoting child pornography (7-8) and one count of misdemeanor first degree sexual misconduct (9). Terry received life sentences on counts one through six, ten year sentences on counts seven and eight and a one year sentence on count nine. The four life sentences on counts one through four were ordered to run concurrently with each other. Counts five through seven were ordered to run concurrently with each other and consecutively to counts one through four. The one year sentence imposed for count nine was ordered to run concurrently with all other counts. In case number CR301-153FX, Terry pleaded guilty to one count of felony rape and four counts of felony sodomy. Terry received five sentences of 15 years to be served concurrently with each other and with all the sentences in case number CR301-109FX.[7] In case number CR30R010001306, Terry pleaded guilty to felony possession of a controlled substance and received a 5 year sentence to be served concurrently with his sentences from Cass County. The district court applied U.S.S.G. § 5G1.3(c) and ordered Terry's federal sentences for possession and production of child pornography to run consecutively to these state sentences.

Terry argues that the district court erred when it ordered his federal sentences to run consecutively to his undischarged state sentences. He claims that U.S.S.G. § 5G1.3(b) required the district court to order the federal sentences to run concurrently to the undischarged state sentences because the criminal conduct giving rise to the undischarged state sentences was used to determine the appropriate offense level for

_____

[7] Case number CR301-153FX concerned minor Victim 1, and case number CR301-109FX addressed minor Victims 2, 3 and 4.

11

the federal sentences.[8] We review the district court's application of U.S.S.G. § 5G1.3 de novo.  United States v. Lange, 146 F.3d 555, 556 (8th Cir. 1998).

Terry correctly points out that subsection (b) of section 5G1.3 mandates that a federal sentence run concurrently to an undischarged state sentence if the offense giving rise to the state conviction was fully taken into account in the determination of the offense level for the federal conviction.  See U.S.S.G. § 5G1.3(b).  Those offenses that led to Terry's state convictions, however, were not considered by the district court for sentencing purposes.  The presentence report clearly indicates that

---

[8] The relevant subsections of section 5G1.3 are as follows:

(b) If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(b)-(c).  The commentary of section 5G1.3 provides:

[o]ccasionally, the court may be faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules. In such case, the court may exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3, Application Note 5.

12

Terry's state offenses were not taken into account in determining his offense level under the Sentencing Guidelines.

With regard to Terry's federal offense level, the presentence report utilizes the sentencing guidelines for criminal production of sexually explicit visual or printed material. See U.S.S.G. § 2G2.1. It does not apply the sentencing guidelines for criminal sexual abuse. See U.S.S.G. § 2A3.1. The crimes of production and possession of sexually explicit videotapes of minors, as charged in the federal case, are different from the crime of sexual abuse of those same minors that the state charges. The videotaping of the sexual abuse of a minor is a different crime than the sexual abuse itself. Neither the base offense level nor the enhancements invoke the sentencing requirements of section 5G1.3(b). See Lange, 146 F.3d at 556 (upholding consecutive sentences because the "events underlying the [earlier] conviction were not taken into account as 'relevant conduct' . . . and so were not taken into account in determining [the] offense level [for the instant offense]"); United States v. Lyons, 47 F.3d 309, 311 (8th Cir. 1995) (per curiam) (concluding section 5G1.3(b) did not apply because the earlier conviction was not considered in the offense level calculation). See also United States v. Tisdale, 248 F.3d 964, 976-77 (10th Cir. 2001) (finding section 5G1.3(b) inapplicable where the base offense level was increased because of the defendant's conduct in the commission of the federal offense and not for his conduct in the state offenses).

The presentence report also shows that Terry's state convictions were not considered when determining his criminal history category. Apart from the presentence report, it is clear that the federal charges were filed because Terry videotaped the abuse and continued to possess the videotapes and the state charges were filed because Terry committed the abusive acts themselves. Thus, the district court had discretion to impose a consecutive sentence because the state and federal offenses are distinct and separate wrongs and because Terry's state convictions did

13

not affect his federal offense level or his criminal history category. <u>Cf</u>. <u>United States v. Caraballo</u>, 200 F.3d 20, 29 (1st Cir. 1999) (finding section 5G1.3(b) inapplicable because the federal sentence addressed crimes other than those addressed by the state sentence and because the state conviction did not impact the federal offense level or the criminal history category). Accordingly, we hold that the district court correctly determined subsection (b) of section 5G1.3 was inapplicable.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14