# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1204

_____

United States of America,            *
                                      *
              Appellee,        *
                                      *     Appeal from the United States
      v.                           *     District Court for the
                                      *     Western District of Missouri.
Pedro Enrique Traveasa Oropesa,   *
                                      *
            Appellant.      *

_____

Submitted: September 10, 2002
Filed: January 14, 2003

_____

Before HANSEN, Chief Judge, RICHARD S. ARNOLD and LOKEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Pedro Enrique Traveasa Oropesa appeals the district court's[1] denial of his motion to suppress evidence following his conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 924(a)(2) & 922(g). We affirm the district court's denial of Oropesa's motion to suppress.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

I.

The Kansas City Police Department first learned about Oropesa's drug activities from Ulises Pomel, who was arrested for drug-related charges in February 2000. Pomel informed Detectives Terence Carter and Gary Gibson that he purchased one to two ounces of cocaine per week from an individual he knew as "Pedro," who sold drugs from an automotive garage across from the police station on Linwood and Troost in Kansas City, Missouri. Pomel told the detectives that he had seen large quantities of cocaine and marijuana at the shop, which he described as a front for narcotics distribution as no automobiles were actually worked on at the shop. Pomel described how drugs were delivered to the shop and seeing other people sell drugs from the shop for Pedro. Pomel directed Detective Gibson to Pedro's residence on the corner of 45th and South Park.

Lamar Brooks was arrested on March 14, 2001, on drug-related charges and agreed to cooperate with the Kansas City Police Department. Brooks informed a detective that his drug source was an individual named "Pedro," who resided at 4501 South Park in Kansas City and that Brooks purchased one to two kilograms of cocaine from Pedro on a daily basis either from Pedro's residence or from an automotive repair shop located at Linwood and Troost. Brooks stated that the 500 grams of powder cocaine and 280 grams of crack cocaine in his possession when he was arrested had been purchased from Pedro that same day. Brooks also told the detective about another supplier, Guadalupe Acosta, and agreed to order two kilograms of cocaine from Acosta in a controlled buy. On March 22, 2001, Acosta and two others were arrested while attempting to deliver cocaine to Brooks.

On April 3, 2001, a detective with the Drug Enforcement Agency Task Force contacted Detective Carter about an informant who claimed to know about drug sales by an individual referred to as "Ki Ki," who sold drugs from a residence at 4501 South Park as well as from an automotive repair shop located at Linwood and Troost.

2

The source claimed that he/she had purchased ounce-quantities of cocaine from Ki Ki for the last several years. The source also claimed to have seen kilogram-quantities of cocaine at both locations.

The detectives taped a conversation between Brooks and Oropesa on April 3, 2001, during which Brooks asked Oropesa about purchasing powder cocaine. Oropesa told Brooks that he would have to call back the next day because "things would be straight" then. (Appellant's Add. 5, Affidavit/Application for Search Warrant at 3.) Brooks took this to mean that Pedro was about to receive a shipment of cocaine. The next day, the detectives ran a computer check on 4501 South Park and confirmed that Oropesa resided there. They showed Brooks a photograph of Oropesa obtained from police files. Brooks identified the man in the photograph as Pedro. He also identified photographs of the house located at 4501 South Park and the automotive repair shop as the locations from which he had purchased cocaine over the past eight months.

Based on the information received from Brooks and the April 3 taped telephone conversation, Detective Carter filed an Affidavit/Application for Search Warrant on April 4, 2001, swearing to the facts stated above and indicating that Brooks had proven reliable in other narcotics investigations. A Jackson County, Missouri, Associate Circuit Judge issued the search warrant the same day, authorizing the search of Oropesa's residence and automotive shop for a period of ten days from the date of issuance. Between April 3 and April 12, detectives taped several telephone conversations between Brooks and Oropesa as Brooks attempted to obtain two kilograms of cocaine from Oropesa. Although the drugs were never discussed by name, Oropesa informed Brooks on April 11 that he had gotten rid of his supply to others because he was unable to reach Brooks but that he would make a call to try to get some more. When Brooks called back on April 12 to see if Oropesa had the cocaine, Oropesa told him to stop by the shop to talk about it. Brooks told Detective Carter that he thought this meant that Oropesa either had the drugs or soon would

have them because in the past, other people sometimes delivered the drugs to Oropesa soon after Brooks arrived for his purchase.

Following the April 12 taped call, Kansas City police executed the search warrant at Oropesa's residence and business. Detective Gibson arrested Oropesa, who was at the business when the search warrant was executed. Detective Gibson told Oropesa that he had a search warrant for his business and recited to Oropesa his Miranda rights. Oropesa was taken to the police station, where he was read his Miranda rights in Spanish, and he told detectives that he owned a 9mm pistol, which he kept under his bed for protection. No drugs or paraphernalia were found at either search location, but a 9mm semi-automatic pistol was found under a bed at the residence.

Oropesa was charged with conspiring to distribute cocaine and being a felon in possession of a firearm. Oropesa moved to suppress both the evidence obtained from the searches and the statements that he made following his arrest, arguing that the search warrant and his arrest were both invalid. The district court adopted the report and recommendation of the magistrate judge,[2] who held an evidentiary hearing and recommended denying the motion. Oropesa pleaded guilty to the felon-in-possession charge, conditioned on his right to appeal the denial of his motion to suppress. The drug charge was dismissed.

II.

Oropesa argues that the evidence seized from his residence, including the gun, should be suppressed because the search warrant was invalid as lacking probable cause. We review the district court's factual findings supporting its denial of a

---

[2]The Honorable Sarah Hayes, United States Magistrate Judge for the Western District of Missouri.

motion to suppress evidence for clear error, and we review its legal conclusions de novo. United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002). Ultimately, however, we are reviewing the state associate circuit judge's determination that probable cause existed to issue the warrant, a determination to which we give "great deference." Illinois v. Gates, 462 U.S. 213, 236, 238-39 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (citing Jones v. United States, 362 U.S. 257, 271 (1960)) (alterations in original)).[3] The issuing judge's task in turn "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Whether probable cause exists depends upon the totality of the circumstances. Id.

Oropesa argues that the affidavit was false to the extent that it indicated that a shipment of cocaine was on its way to Oropesa because the statement "things would be straight" was never stated in the April 3 recorded telephone conversation. He argues that the affidavit was also misleading because Detective Carter testified at the suppression hearing that "'[d]rugs could or could not be there,'" (Appellant's Br. at 22 (citing Suppression Hrg. Tr. at 70, ll. 1-8)), but Detective Carter did not include this information in the affidavit. Oropesa argues that without the false information, and considering the omitted misleading information, the affidavit contained only stale information and that there was nothing in the affidavit from which the court could

---

[3]More recently, the Supreme Court explained the different standards of review to be applied to probable cause determinations between cases involving warrantless searches, which are reviewed de novo, and cases in which a search is conducted pursuant to a warrant, which are given deference. See Ornelas v. United States, 517 U.S. 690, 698-99 (1996). "The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches." Id. at 699 (internal quotation and citation omitted).

have concluded that drugs were present at Oropesa's residence at the time of the warrant application.

First, we dismiss the notion that the failure to include Detective Carter's alleged belief that "[d]rugs could or could not be there" made the affidavit misleading. The appellant's quotation is inaccurate,[4] and the referenced testimony involved a conversation between Detective Carter and Brooks that occurred on April 12, after the warrant was issued on April 4. Whether Detective Carter was unsure whether drugs would be present on April 12 when the warrant was executed is irrelevant to whether he believed on April 4, when he applied for the warrant, that drugs would be present. Excluding reference to a conversation that had not yet taken place did not make Detective Carter's affidavit misleading.

We also believe that the affidavit did not contain false statements. During the evidentiary hearing on Oropesa's motion to suppress, Detective Carter testified that although the phrase "things would be straight" was not heard in the recording, portions of the recorded conversation were inaudible, and Brooks told Detective Carter that the statement was made. (Appellee's Add., Report and Recomm. at 11.) The magistrate judge found Detective Carter's testimony credible. Oropesa offered no evidence to support his assertion that the statement was not made, other than the fact that it was not recorded. Given the deference we accord the district court's factual findings, particularly as to witness credibility, see Terry, 305 F.3d at 822, we will not disturb the court's finding that Oropesa told Brooks that "things would be straight" the next day.

Oropesa next argues that even considering all of the information contained in the affidavit, there were insufficient facts from which the issuing court could

---

[4]Detective Carter actually testified that Brooks told him that the drug shipment "could be there or it could be on the way." (Suppression Hrg. Tr. at 70, l. 3.)

conclude that drugs would probably be present at his home and business. Summarizing, the affidavit stated that Brooks, a reliable informant, had identified Oropesa from a photo; that Brooks named Oropesa as the source of 500 grams of powder cocaine and 280 grams of crack cocaine that Brooks had purchased three weeks prior to the date of the warrant application; that Brooks told officers he had made regular purchases of kilogram-quantities of cocaine from Oropesa over the previous eight months; that Detective Carter first learned of Oropesa from another informant who had named Oropesa as his source one year prior to the warrant application, and that the first informant described seeing large quantities of drugs at Oropesa's automotive shop, witnessed others purchasing drugs at Oropesa's automotive shop, described the drug operation from the automotive shop, and directed detectives to Oropesa's residence on the corner of 45th and South Park; that a third informant, whose reliability was unproven, had described Oropesa's business and home as a regular source for his/her supply of drugs, that the informant claimed to have seen kilogram-quantities of drugs at both locations, and that the informant described two hidden compartments in the residence; and that during a taped telephone conversation between Brooks and Oropesa the day prior to the affidavit application, Oropesa told Brooks that "things would be straight" the next day, which Brooks told Detective Carter meant that Oropesa would have the drugs.

Not only had Brooks proved to be a reliable informant, as evidenced by the arrest of Brooks' second drug source just two weeks earlier, two other informants corroborated Brooks' information that Oropesa sold drugs out of his home and automotive shop. Although the other two informants' information was less timely, the informants still provided corroboration for Brooks' information. See United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2000) (holding that an informant's tip provides probable cause if corroborated by independent evidence), cert. denied, 123 S. Ct. 390 (2002). Further, Brooks was more than a mere informant providing a tip. He was working with the detectives in an attempt to set up a controlled buy. Given the totality of the circumstances as described in Detective Carter's affidavit, we

7

conclude that the state circuit judge had a "substantial basis for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39 (internal quotations omitted).

Even without the taped telephone conversation, we believe that the totality of the circumstances provided probable cause to support the search warrant. Brooks was arrested three weeks prior to the date of the affidavit and identified Oropesa as his source of cocaine, stating that he had purchased the cocaine in his possession from Oropesa on the day of his arrest and that he had purchased kilogram-quantities of cocaine from Oropesa during the eight months prior to his arrest. As stated before, Brooks had proved to be a reliable informant, and his story that Oropesa sold drugs from his residence and automotive shop was corroborated by two other informants. Given the ongoing nature of a large-scale drug distribution operation, Brooks' information was not stale and supported the conclusion that there was a fair probability that evidence of drugs would be present on the day Detective Carter applied for the warrant. See United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (holding that a drug transaction one month prior to the warrant application was not stale information in light of the ongoing nature of the crime), cert. denied, 534 U.S. 1116 (2002).

## III.

Oropesa next argues that the statements he made after his arrest should be suppressed because his warrantless arrest was illegal. The Fourth Amendment requires that a warrantless arrest be supported by probable cause, which "exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." Hartje, 251 F.3d at 775. We review the district court's factual findings for clear error

8

and the existence of probable cause to make the warrantless arrest de novo. <u>Terry</u>, 305 F.3d at 824.

Oropesa argues that the government's assertion that Oropesa was arrested pursuant to an investigative twenty-hour hold[5] was pretextual because the notion of a twenty-hour hold was not mentioned until the suppression hearing. We must again caution police officers and point out to the government that Missouri's twenty-hour hold statute does not provide any authority to arrest persons without a warrant and hold them in custody for twenty hours. <u>See</u> <u>United States v. Clarke</u>, 110 F.3d 612, 614 (8th Cir. 1997) ("The Missouri statute, first of all, does not purport to give anyone a power to arrest. That statute is concerned not with the authority to arrest but with the rights of persons who have already been arrested."). Even if the arresting officer sought to arrest Oropesa pursuant to a twenty-hour hold, the officer still had to have probable cause to arrest Oropesa without an arrest warrant. Thus, the officer's post-arrest reliance on the twenty-hour hold as justification for the arrest is irrelevant; the test is whether, based on a totality of the circumstances, the facts known to the arresting officer at the time of the arrest objectively provided probable cause to arrest the individual. <u>See</u> <u>United States v. Sherrill</u>, 27 F.3d 344, 347 (8th Cir.), <u>cert. denied</u>, 513 U.S. 1048 (1994).

Detective Gibson knew that Brooks, a reliable informant, had identified Oropesa from a photo; that Brooks named Oropesa as the source of 500 grams of powder cocaine and 280 grams of crack cocaine that Brooks had purchased one month prior to the date of the arrest; that Brooks had told officers he had made regular purchases of kilogram-quantities of cocaine from Oropesa for eight months;

---

[5]Missouri law provides that "all persons arrested and confined in any jail or other place of confinement by any peace officer, without warrant or other process, . . . shall be discharged from said custody within twenty hours from the time of such arrest, unless they shall be charged with a criminal offense . . . and be held by warrant to answer to such offense." Mo. Ann. Stat. § 544.170 (West 2002).

that another informant had named Oropesa as his source of drugs and described seeing large quantities of cocaine at Oropesa's residence and business; and that police officers had recorded telephone conversations during which Brooks attempted to set up a purchase of cocaine from Oropesa over a period of several days prior to the arrest, which culminated in Oropesa telling Brooks to meet him at the automotive shop on the day of the arrest. The information contained in the search warrant and the content of the April 12 taped telephone conversation provided Detective Gibson with "knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that" Oropesa had committed an offense. Hartje, 251 F.3d at 775; see also Sherrill, 27 F.3d at 347 (holding warrantless arrest supported by probable cause where police relied on information from a reliable informant that defendant had been dealing crack from his residence and police corroborated the tip through surveillance). Oropesa's warrantless arrest was supported by probable cause, and the district court correctly denied his motion to suppress statements made following his arrest.

IV.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10