UNITED STATES of America,
Plaintiff,

v.

Crystal Lee FREDERICKS, Defendant.

No. C4–03–23.

United States District Court,
D. North Dakota,
Northwestern Division.

July 28, 2003.

Jeff L. Nehring, Nehring Law Office, Williston, ND, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Evidence and Statements. The Defendant, Crystal Lee Fredericks (Fredericks), was arrested for Possession of a Controlled Substance in violation of the Three Affiliated Tribes' Tribal Code following a search of her residence. Fredericks was subsequently indicted on the charge that she knowingly and intentionally possessed with the intent to distribute five (5) or more grams of methamphet-

amine in violation of 21 U.S.C. § 841(a)(1). Fredericks seeks to suppress the evidence which formed the basis for the Indictment as well as the incriminating statements made to law enforcement officers following her arrest on tribal charges. Fredericks contends that the search of her residence was conducted in violation of her rights under the Fourth Amendment of the United States Constitution and Article I, Section 8, of the North Dakota Constitution. Fredericks also contends that she was not informed of her Miranda rights following her arrest. For the reasons outlined below, Fredericks' motion is denied.

## I. BACKGROUND

On February 3, 2003, upon presentation of an "Affidavit for Search Warrant" signed and sworn to by Bureau of Indian Affairs (BIA) Officer Jay Standish, Tribal Judge El Marie Conklin issued a warrant pursuant to Rule 17 of the Fort Berthold Rules of Criminal Procedure that authorized a search of Norma Smith's residence in New Town, North Dakota. Officer Standish had sought a search warrant based upon his belief that Fredericks lived with Norma Smith and was stashing methamphetamine in her bedroom hutch. Officer Standish's "Affidavit for Search Warrant" contained the following narrative to establish probable cause for the search:

> That Corrections Officer, Charlene Knight was monitoring a telephone call initiated by Crystal Fredericks which indicated a location of a "stash" of illegal drugs; and that the same were to be found within or under a hutch, this conversation took place on January 11–13, 2003.

> Further; information was obtained by Daryl Cummings, the uncle to Crystal Fredericks, that Crystal supplied methamphetamine to his niece (Camarillo Cummings) and that Crystal Fredericks has the methamphetamine at the residence of Norma Smith; and the hutch in her bedroom was listed as the place where the controlled substance could be found. Joanne Standish provided and verified this information. The residence is occupied by Norma Smith; and she lets Crystal Fredericks reside therein, in a bedroom.

> The hutch has been identified on two separate occasions as the location of the methamphetamine.

Defendant's Brief in Support of Motion to Suppress Illegally Obtained Evidence and Statements, Ex. A.

Upon obtaining the Search Warrant, Officer Standish proceeded to search Norma Smith's residence. During the search, Officer Standish discovered ten individual packets containing a crystal-like substance, a plastic bag containing several additional packets filled with a crystal-like substance, and a check stub with Crystal Fredericks' name on it.

Officer Standish was concluding his search when Fredericks arrived at the residence. Officer Standish informed Fredericks of the search results; arrested Fredericks for Possession of a Controlled Substance in violation of the Tribal Code; and then proceeded to advise Fredericks of her rights under Tribal Rule 6.[1] There-

---

1. Tribal Rule 6 provides that immediately upon arrest, or as soon thereafter as practical, the arrested person shall be advised of the following rights:

(1) That he has the right to remain silent;

(2) That any statements made by him may be used against him in court.

(3) That he has the right to obtain the assistance of counsel at his own expense. That if he does not wish to obtain counsel at his expense, he may obtain the services of the lay advocate at no expense to himself.

(4) That if he begins to answer questions or make statements, he may choose to stop the same at any time.

after, Fredericks reportedly made several incriminating statements.

On April 22, 2003, Fredericks was charged with knowingly and intentionally possessing with intent to distribute five (5) grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). On June 18, 2003, Fredericks filed a motion to suppress evidence obtained during Officer Standish's search and subsequent interrogation on the following grounds:

(1) The search warrant issued for the Defendant's residence was not issued on a sworn affidavit or testimony in violation of the Fourth Amendment;

(2) The officer present during the execution of the search warrant did not prepare and verify an inventory of any property seized in violation of Rule 41 of the Federal Rules of Criminal Procedure;

(3) The search warrant was not issued upon probable cause in violation of the Fourth Amendment;

(4) The Judge that issued the search warrant was not a neutral and detached magistrate under the circumstances in violation of the Fourth Amendment;

(5) The statements and gestures gathered by law enforcement were illegally obtained because the Defendant was not given her Miranda warning in violation of the Fifth Amendment; and

(6) The evidence seized during the execution of the search warrant was the fruit of an illegal search and seizure in violation of the Fourth Amendment.

## II. LEGAL ANALYSIS

■ The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. *United States v. Alberts*, 721 F.2d 636, 638 (8th Cir.1983). Before conducting a search, the Government is generally required under the Fourth Amendment to secure a war-

rant upon a showing of probable cause supported by oath or affirmation.

## A. RULE 41 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Fredericks contends that the tribal search warrant issued in this case is void because Tribal Judge Conklin was never provided with a properly sworn affidavit. Specifically, Fredericks contends that Officer Standish's affidavit was neither sworn before a notary public nor in the presence of a judge or magistrate as required by the Fourth Amendment and, as such, cannot be considered an affidavit under Rule 41 of the Federal Rules of Criminal Procedure. Fredericks also contends that Officer Standish did not comply with Rule 41(f)(2) of the Federal Rules of Criminal Procedure in that he did not prepare and verify an inventory of the items found during his search.

In response, the Government contends that the search warrant conformed with federal constitutional requirements. The Government also contends that Rule 41 is not applicable because Officer Standish was acting in his capacity as a tribal officer.

■ Rule 41 does not apply when federal authorities are not involved in applying for or executing the warrant. *United States v. Hornbeck*, 118 F.3d 615, 617, n. 4 (citing *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir.), cert. denied, 513 U.S. 878, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994)). At first blush it would appear that Rule 41 would apply as a federal authority, namely, BIA Officer Standish, applied for and executed the warrant at issue. However, having reviewed the facts surrounding Tribal Judge Conklin's issuance of the warrant, the Court is persuaded that Officer Standish was acting in his capacity as a tribal officer. Officer Standish is cross-depu-

tized with the Three Affiliated Tribes Police Department and has the authority to enforce tribal law. An examination of the record reveals that Officer Standish sought a tribal search warrant, that he applied for the search warrant on a tribal form, and that he sought the assistance of a tribal prosecutor when completing the form. Further, as the following excerpt of Officer Standish's affidavit reveals, the application for a search warrant was spurred by his suspicion that Fredericks had violated the Tribal Code:

> That on about the 3rd day of February 2003, information was made known to me that the following property could be located at: Norma Smith Residence; that in bedroom occupied by Crystal Fredericks is a hutch that contains a controlled substance, in violation of Schedule III of Tribal Resolution 77–07 (methamphetamine).

Defendant's Brief in Support of Motion to Suppress Illegally Obtained Evidence and Statements, Ex. A. Because Officer Standish was acting in his capacity as a tribal officer when applying for the tribal search warrant and conducting the search of Norma Smith's residence, the requirements of Rule 41 do not apply in this case.

■ Nevertheless, the search warrant at issue must still conform with federal constitutional requirements. Under the Fourth Amendment to the United States Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." "An Oath or Affirmation is a formal assertion of, or attestation to, the truth of what has been or is to be said." *United States v. Brooks,* 285 F.3d 1102, 1105 (8th Cir.2002).

■ In determining whether the Fourth Amendment's oath or affirmation requirement has been fulfilled, the Court may consider the language used in the search warrant application as well as the applicant's conduct. 285 F.3d 1102, 1105–

06. As the Eighth Circuit Court of Appeals explained in *United States v. Brooks,* a person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words.

Almost all of the apposite cases indicate that this is the relevant inquiry because a person who manifests an intention to be under oath is in fact under oath. In *Atwood v. State,* 146 Miss. 662, 111 So. 865, 866 (1927), for instance, where both the law enforcement officer, who signed the affidavit in the presence of a justice of the peace, and the justice of peace, who affixed his jurat, knew an oath was required and did what they thought was necessary for the administration of an oath, the court concluded that "by construction, what occurred amounted to the taking of the necessary oath." The court added that "[o]ne may speak as plainly and effectually by his acts and conduct as he can by word of mouth." *Id.*

■ The Court finds that, under the circumstances, Officer Standish's "Affidavit for Search Warrant" satisfied the oath or affirmation requirement and that the search warrant was not issued in violation of the Fourth Amendment. The Affidavit begins by stating "that the undersigned being duly sworn deposes and states to the Court...." Additionally, the Affidavit reveals that Officer Standish signed the document upon presentation to the tribal court and Judge Conklin attested that the Affidavit was sworn to and subscribed by Officer Standish in her presence.

The nature of the document as well as Officer Standish's attendant conduct indicates that Officer Standish realized that he was swearing to the truth of what he said. Officer Standish's recitation that he was "duly sworn" reflects his intention to be under oath. Officer Standish's conduct was also consistent with this intention as

he took the document to a tribal court judge and signed it in her presence. As it is apparent that Officer Standish had manifested an intent to be under oath, as such, he can be considered to be under oath for Fourth Amendment purposes. *United States v. Brooks,* 285 F.3d 1102, 1105.

■ As for restrictions regarding the preparation of a search inventory, they are creatures of statute or rules. A failure to inventory the property seized during a search has no relation to the Fourth Amendment prohibition against unreasonable searches and seizures. See *United States v. Dudek,* 530 F.2d 684, 688 (6th Cir.1976); see also *United States v. Stockheimer,* 807 F.2d 610, 613 (7th Cir.1986) (citing *United States v. Harrington,* 504 F.2d 130, 134 (7th Cir.1974); *United States v. Dudek,* 530 F.2d 684, 688 (6th Cir.1976); and *United States v. Marx,* 635 F.2d 436, 441 (5th Cir.1981), for the proposition that a failure to comply with Rule 41(d) requirements generally does not to amount to a deprivation of Fourth Amendment rights necessitating suppression).

■ Rule 17(D) of the Three Affiliated Tribes' Tribal Code requires that the officer executing a search warrant prepare a written inventory of the property he seized. See Government's Response to Defendant's Motion to Suppress Evidence and Statements, Ex. 2. The rule does not specify the form or require verification for such an inventory. In this case, Officer Standish complied with the requirements of the Tribal Code and recorded in handwritten form the items seized during the search of Norma Smith's residence on the "Affidavit for Search Warrant." See Defendant's Brief in Support of Motion to Suppress Illegally Obtained Evidence and Statements, Ex. A.

## B. PROBABLE CAUSE

■ According to Fredericks, the search warrant issued by Tribal Judge Conklin was not supported by probable cause. Specifically, Fredericks contends that the warrant was based upon (1) an affidavit containing a deliberate or reckless falsehood, and (2) uncorroborated hearsay evidence. Probable cause means a " 'fair probability that contraband or evidence of a crime will be found in a particular place,' given the circumstances set forth in the affidavit." *United States v. Horn,* 187 F.3d 781, 785 (8th Cir.1999) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); see also *United States v. Walker,* 324 F.3d 1032, 1038 (8th Cir.2003); *United States v. Oropesa,* 316 F.3d 762, 766 (8th Cir.2003). Whether probable cause exists depends upon the totality of the circumstances. See *United States v. Oropesa,* 316 F.3d 762, 766 (8th Cir.2003); see also *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir.1998) (stating that "search warrant applications should be read with common sense and not in a grudging, hyper-technical manner"). When reviewing the sufficiency of an affidavit supporting a search warrant, considerable deference is accorded to the issuing judicial officer. See *United States v. Fulgham,* 143 F.3d 399, 401 (8th Cir.1998); see also *United States v. Oropesa,* 316 F.3d 762, 766 (citing *Illinois v. Gates,* 462 U.S. 213, 236, 238–38, 103 S.Ct. 2317, 76 L.Ed.2d 527).

## 1) DELIBERATE OR RECKLESS FALSEHOOD

■ A search warrant may be deemed invalid if the issuing judicial officer's probable cause determination was based upon an affidavit containing a deliberate or reckless falsehood. See *United States v. Box,* 193 F.3d 1032 (8th Cir.1999) (citing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). A defendant so challenging a warrant must make a substantial preliminary showing that the false statement knowingly and intentionally, or with reckless disregard

for the truth, was included by the affiant in the warrant affidavit. *Id.* If the defendant can make such a showing, and if the alleged false statement forms the basis for probable cause, the Fourth Amendment requires the Court to conduct a hearing at the defendant's request. If the defendant presents no proof that the affiant lied or recklessly disregarded the truth, the Court is not required to conduct a hearing. See *United States v. Mathison,* 157 F.3d 541, 548 (8th Cir.1998).

■■■ Fredericks contends that Officer Standish knowingly and intentionally included false statements in his "Affidavit for Search Warrant." Specifically, Fredericks contends that Officer Standish identified Daryl Cummings as his source of information when he in fact had contact with Joanne Standish. For support, Fredericks cites the following excerpt from Officer Standish's February 3, 2003, incident report:

> I called Prosecutor Bill Woods of the Tribal Court. I advised of this traffic and asked for a search warrant. It was not known if Crystal pays rent to Norma for use of this bedroom. Because of the reasonable expectation of privacy, I asked for a search warrant. I gave this information to Mr. Woods by telephone as he filled out this form for this Officer.

> When this search warrant was finished I went to the courts to sign it. I arrived to this Court and read this warrant to search. At this time I did not see the part it states that Daryl Cummings was the subject that had told me this information. It was Joann Standish who had told me this information.

> I did misread this Warrant and sign it. I saw that Joanne Standish's name was not in the search warrant. It asked Mr. Woods to put down that Joanne Standish verified this information. Mr. Woods then added this part to the search warrant, in which I did sign this

search warrant. Judge El Marie Conklin then had signed this search warrant giving this Officer permission to enter Norma Smith's residence. After Judge El Marie Conklin signed this search warrant Officer Johnson and I went to this reported residence.

Defendant's Brief in Support of Motion to Suppress Illegally Obtained Evidence and Statements, pp. 6–7.

The Government in its response contends that the affidavit indicated that the information obtained from Daryl Cummings was "provided and verified" by Joanne Standish.

Nowhere in the affidavit does Officer Standish claim to have spoken directly to Daryl Cummings. Rather, Officer Standish attributes Joanne Standish as his source of information. Officer Standish acknowledged that Daryl Cummings had provided information concerning Fredericks' activities, but added that it was Joanne Standish who had relayed this information to him. An examination of the incident report reveals that, contrary to Fredericks' assertions, Officer Standish took steps to ensure that his affidavit was truthful and accurate and he identified Joanne Standish as his source of information. Thus, there is nothing to support Fredericks' claim that Officer Standish lied or recklessly disregarded the truth. Because Fredericks has not made a preliminary showing that Officer Standish lied or exhibited a reckless regarded for the truth, the Court is not required to conduct a Franks hearing on this issue.

## 2) HEARSAY

Fredericks also contends that the information contained in Officer Standish's affidavit amounted to double hearsay, which she asserts crosses the line between constitutionally permissible evidence to be considered by a judicial officer. Fredericks also questions the reliability of Joanne

Standish. In response, the Government maintains that hearsay can serve as a basis for probable cause. The Government also contends that Joanne Standish was a citizen informer as opposed to a confidential information. The significance of this distinction is that citizens informers are considered by some to be more deserving of a presumption of reliability than an informer from the criminal milieu. See *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

■■■■ Information not otherwise admissible at trial may be used to demonstrate probable cause so long as there is a substantial basis crediting the information. See *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Draper v. United States*, 358 U.S. 307, 311–12, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); see also *United States v. Smith*, 462 F.2d 456, 458 (8th Cir.1972). For example, probable cause may be found in hearsay statements from reliable persons, in hearsay statements from confidential informants corroborated by independent investigation, or in observations made by trained law enforcement officers. *Walden v. Carmack*, 156 F.3d 861, 870. Thus, the fact that Officer Standish's affidavit contained information obtained through hearsay is not necessarily fatal to a finding of probable cause.

■■■■ The credibility and reliability of a person providing information to law enforcement officers are important factors to be considered in a determination of probable cause. *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir.1996). "They are not, however, separate and independent requirements to be rigidly exacted in every case." *Id.* When reviewing the totality-of-the-circumstances, an informant's basis of knowledge can be balanced against, rather than overruled by, that informant's lack of a track record of reliability. See *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986).

■■■■ Officer Standish did not attest to the reliability or track record of Joanne Standish in his affidavit. However, he did identify the basis for Joanne Standish's knowledge, that being statements made to her by Daryl Cummings along with her own familiarity with Fredericks' living situation. Officer Standish also included information obtained from corrections officer Charlene Knight which corroborated the information provided by Joanne Standish. Based upon the these circumstances, the Court cannot conclude that Tribal Judge Conklin erred when finding that probable cause for the issuance of a search warrant existed.

## C. NEUTRAL AND DETACHED JUDICIAL OFFICER

■■■■ Next, Fredericks suggests that Tribal Judge Conklin was not acting in her capacity as a neutral and detached judicial officer when issuing the search warrant because she did not question Officer Standish. However, the fact that Tribal Judge Conklin chose not to conduct a full blown inquiry into the information contained in the affidavit does not necessary entail that she abandoned her role as a neutral and detached judicial officer or that she was acting simply as a rubber stamp. Simply stated, the naked assertion that Tribal Judge Conklin failed to exercise independent judgment is not enough. As noted above, Tribal Judge Conklin was presented with information from two individuals, one being a corrections officer, both of whom indicated that Fredericks was stashing drugs in her bedroom.

## D. MIRANDA WARNING

■■■■ As the Court noted previously, Fredericks was questioned by Officer Standish after being arrested on tribal charges and informed of her rights under Rule 6 of the Tribal Code. Fredericks con-

tends that statements she made to Officer Standish following her arrest should be excluded on the grounds that Officer Standish failed to inform her of her Miranda rights. The Government in its response contends that Officer Standish's advisement of rights under Tribal Rule 6 was adequate to reasonably convey to Fredericks her Fifth Amendment rights.

The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established procedural safeguards to ensure that law enforcement officers advise criminal suspects of their Fifth and Fourteenth Amendment rights before conducting a custodial interrogation. These safeguards or Miranda warnings are substantially similar to the notification requirements set forth in Tribal Rule 6 in that both require law enforcement officers to inform a person who has been arrested of her right to remain silent; that her statements may be used against her in court; and that she has the right to presence of counsel. Tribal Rule 6 differs from Miranda only in that it provides for the appointment of a lay advocate as opposed to an attorney in the event that the person cannot afford counsel.

An advocate, as defined by Section 4.1 of the Forth Berthold Tribal Code, is "a person who functions as a lay attorney and may serve as a public defender, prosecutor, or legal representative in private cases." An individual may obtain a conditional license from the Tribe if he has taken college courses in a law-related field, has paralegal experience, or holds an associate degree in criminal justice or similar field. Once the individual is issued a conditional license, he has 6 months in which to pass an examination administered by either a tribal judge or the bar board.

Although not an attorney, a lay advocate should possess enough education or knowl-edge by virtue of their ability to meet the tribe's licensing requirements to engage in an informed discussion with a suspect about the wisdom of speaking to law enforcement officers. Thus, under the circumstances, the Court finds that the warning conveyed to Fredericks by Officer Standish was an effective equivalent to the Miranda warning.

## III. CONCLUSION

The Court finds that Officer Standish's "Affidavit for Search Warrant" comported with Fourth Amendment requirements, that the search warrant issued by Tribal Judge Conklin was supported by probable cause, and that Fredericks was given an effective equivalent to a Miranda warning. Accordingly, the Court DENIES Fredericks' Motion to Suppress Evidence and Statements (Docket No. 13).

IT IS SO ORDERED.