# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1380

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Taft Burtton, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 2009
Filed: April 2, 2010

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Taft Burtton was charged in a two-count indictment with possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and criminal forfeiture of $4886 seized from his person and $111 seized from his vehicle. Burtton sought suppression of

evidence seized as a result of a traffic stop of his vehicle, including the search of his person. The district court[1] denied Burtton's motion to suppress.[2] We affirm.

## I. *Background*[3]

At approximately 5:30 p.m. on the evening of December 2, 2007, Omaha Police Department Officers James Maloney and Taylon Fancher were in uniform, in a marked police car, on routine patrol in Omaha. After observing a Lincoln Navigator run a stop sign and fail to signal its intent to turn westbound, they stopped the vehicle.

Officer Maloney approached the driver side of the vehicle, while Officer Fancher approached the passenger side. The Lincoln Navigator contained three occupants: a driver and two backseat passengers. The occupants had removed the middle seat, and the rear passengers were in the far backseat, creating a "kind of limousine setup." Burtton sat in the rear seat of the car behind the driver, Terrence Partee. Ralph Cotton also sat in the rear seat with Burtton. Cotton initially provided the officers with a false name and date of birth.

When Officer Maloney approached the vehicle, he observed the two backseat passengers holding 12-ounce plastic cups and saw a liquor bottle on the floor. Additionally, he noticed a very strong odor of marijuana coming from the vehicle. Officer Maloney spoke to Partee, the driver, who admitted that he had a suspended driver's license.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]Burtton entered a conditional guilty plea, preserving his right to appeal the district court's denial of his motion to suppress.

[3]These facts are taken from the magistrate judge's report and recommendation, which the district court adopted. Burtton did not object to these factual findings.

For safety reasons, the officers directed the occupants to exit the vehicle because of difficulty observing the occupants due to the number of people in the vehicle, window tints, and darkness approaching. The officers secured them with handcuffs. Officer Maloney asked Burtton and Cotton what they were drinking, and they pointed to the liquor bottle on the floor in the backseat. Officer Maloney smelled the cups and concluded that they contained alcohol. After also discovering that Partee and Cotton had outstanding misdemeanor warrants for their arrest, the officers arrested all of the occupants of the Lincoln Navigator.

Officer Maloney then searched Burtton's person before searching the vehicle. Officer Maloney found a baggie containing about 15 grams of marijuana tucked in Burtton's sock and approximately $4500 in cash. Based on his experience, Officer Maloney considered $4500 to be an usually large amount of cash to be carrying.

After Officer Maloney searched Burtton, the officers placed Burtton in Officer Maloney's police cruiser and searched the Lincoln Navigator. There, the officers discovered less than an ounce of marijuana or marijuana residue. The officers also found a recently smoked marijuana blunt in the ash tray of the Lincoln Navigator. During the search, Burtton, sitting in the police cruiser, called to Officer Maloney and stated that the $4500 was for a real estate deal in south Omaha. Burtton said, "I know what you're thinking. You think because I got a lot of money, there's marijuana in the car, that I might be a drug dealer or something." When Officer Maloney asked Burtton why he did not use a bank or a cashier's check—something with a receipt—for the real estate deal, Burtton replied that using cash was "easier." Officer Maloney found this explanation suspicious, but he did not ask additional questions. Officer Maloney had no evidence to support or contradict Burtton's explanation for carrying the cash.

During the traffic stop, Officer Maloney called Officer Joseph Baudler of the Omaha Police Department. Officer Maloney summarized the traffic stop and asked Officer Baudler to speak to the occupants of the house at 3050 Newport Avenue.

Baudler was to visit the house to determine who the occupants were and seek consent to search the house. Officer Maloney told Officer Baudler that he had venue items of Terri Burtton or Taft Burtton that linked them to 3050 Newport Avenue, although Taft Burtton had given Officer Maloney a different address—304 North 38th Street. Officer Baudler agreed to contact the occupants.

Officer Maloney discovered that the Lincoln Navigator was registered to Burtton but that no address was associated with the license plates. At the scene, Burtton told Officer Maloney that he lived at 304 North 38th Street but sometimes stayed with his estranged wife, Terri Burtton.[4] Officer Maloney learned from the police dispatcher that 304 North 38th Street, Omaha, Nebraska, was not a valid address. Officer Maloney drafted his affidavit in support of a search warrant of 3050 Newport Avenue based upon his belief that the address was invalid. But Officer Maloney later learned that the address was valid. Officer Maloney learned from Burtton that Terri Burtton lived at 3050 Newport Avenue.

Based on his experience and observations at the traffic stop, Officer Maloney suspected that the marijuana found in the Lincoln Navigator came from the baggie found on Burtton and that Burtton could have sold the marijuana to others. Based on this belief, Officer Maloney arrested Burtton for possession with suspicion to deliver marijuana. Officer Maloney transported Burtton to the police station at approximately 6:30 to 6:45 p.m. At 7:05 p.m., Officer Maloney advised Burtton of his *Miranda* rights at the police department. Burtton responded "yes sir" to each question, and

---

[4]In contrast, Burtton recalls stating, "Prior to me moving to 3050 Newport, I lived at 304 North 38th Street." Burtton testified that he did not tell Officer Maloney that he was currently living at 304 North 38th Street and that Officer Maloney got that address from the license plate. Additionally, Burtton stated that he and his wife do not fight. The magistrate judge concluded that this discrepancy between Officer Maloney's testimony and Burtton's testimony "does not create a material difference." But the magistrate judge credited Officer Maloney's testimony after observing the witnesses' demeanor and considering their testimony in light of all of the other credible evidence.

-4-

Officer Maloney recorded Burtton's answers via a rights-advisory form. After Officer Maloney advised Burtton of his rights, Burtton told Officer Maloney that "the only thing you're going to find at [3050 Newport Avenue] is marijuana residue" and then invoked his right to silence.[5] Partee and Cotton, in separate interviews, mentioned to the officers that they had been at 3050 Newport Avenue earlier that day smoking marijuana and playing video games with Burtton.

Meanwhile, at 6:15 p.m., Officer Baudler and another officer arrived at 3050 Newport Avenue. They knocked on the door and met a woman who identified herself as Terri Burtton. The officers asked her if they could speak to her, and she allowed the officers to enter the home and proceed to the kitchen area. Officer Baudler told Terri Burtton that her husband had been arrested for possession of narcotics. He then asked her to consent to a search of the home for narcotics. She wanted to talk to her husband before she consented to a search of the residence.

On two separate occasions, Terri Burtton contacted her husband at the police station where they discussed the consent to search. Both Taft Burtton and Terri Burtton signed a permission-to-search form. But almost immediately after signing the form, Taft Burtton revoked his consent. Officer Maloney contacted Officer Baudler and told him that Taft Burtton had revoked his consent. After learning that her husband had revoked his consent, Terri Burtton revoked her consent. She testified that she asked the officers to leave the residence but that they refused.

At 7:30 p.m., Officer Maloney drafted an affidavit and application seeking a search warrant for the residence. Officer Maloney asked Officer Baudler to secure the house while waiting for the issuance of the warrant. Based on his experience, Officer Baudler was concerned that evidence of narcotics, if in the residence, could easily be

_____

[5]Burtton denied making any statements about marijuana residue to Officer Maloney or that any residue would be found at 3050 Newport Avenue. The magistrate judge credited Officer Maloney's testimony.

destroyed absent a police presence. Officer Baudler went through the house to make sure that no adults were present and that no one was hiding, then he continued to wait for the search warrant in the kitchen area with Terri Burtton. Officer Baudler informed Terri Burtton that the officers would be waiting at her house until the warrant arrived.

Later, Terri Burtton received a telephone call and, during the call, asked Officer Baudler if she was under arrest. Officer Baudler replied "no." She then stated that she wanted to leave the residence, and the officers did not object. She left the residence for approximately 20 minutes. When Officer Baudler informed Officer Maloney that Terri Burtton had left, Officer Maloney stated that he was on his way to get the warrant signed.

Officer Maloney's search warrant affidavit stated his belief that the officers would discover

> [m]arijuana and it's [sic] derivatives, whether homemade or manufactured; scales and packaging materials commonly used in the distribution of illicit drugs; Monies and proceeds associated with the sales of illicit drugs; Records used to conduct illegal narcotics operation and venue items identifying the occupants of 3050 Newport Avenue, Omaha, Douglas County, Nebraska.

In support of the search, the affidavit states, in relevant part:

> On SUN 02DEC07 1733 hours Affiant Officers MALONEY #1701 and Officer FANCHER #1839 conducted a traffic stop near 41st and Lake Street for stop sign violation on a silver 1999 Lincoln Navigator (PVC359/NE). Upon approach Affiant Officers MALONEY and Officer FANCHER detected the strong odor of marijuana coming from the vehicle, observed an open container of alcoholic beverage in plain view and the driver, Terrence PARTEE (6-30-73), had a suspended license and outstanding misdemeanor warrant. Passenger, Ralph COTTON, had an outstanding misdemeanor warrant. A search of the vehicle incident to

the arrest resulted in four different bags of marijuana less than 1 ounce and one marijuana "blunt" being recovered in addition to the open container of alcoholic beverage.

The owner and additional passenger of the vehicle, Taft BURTTON, was in possession of marijuana less than an 1oz [sic] (estimated at ½ ounce by BURTTON) as well as over $4500 in US currency. BURTTON claimed he was going to use the cash to buy a building in south Omaha for his business. Affiant Officer MALONEY considered this a suspicious reason for having over $4500 in cash in the pocket of BURTTON. When Affiant Officer MALONEY asked BURTTON why he wouldn't use a check or credit on order to prove and record the transaction, BURTTON would only reply that it was "easier[."] BURTTON made a post Miranda statement that Affiant Officers would find marijuana residue if they searched the residence at 3050 Newport Avenue. Both passengers Terrance PARTEE (DOB: 6-30-73) and Ralph COTTON (5-28-76) stated they were at 3050 Newport Avenue earlier today smoking marijuana and playing video games.

BURTTON told Affiant Officer MALONEY and Officer FANCHER that he lived at an apartment at 304 North 38th Street in Omaha, NE in addition to staying sometime[s] with his wife at 3050 Newport Avenue, because they were currently estranged. Affiant Officer MALONEY checked with Northeast dispatcher and learned that 304 North 38th Street in Omaha, NE was not a valid address.

Officer BAUDLER #1203 went to 3050 Newport Avenue in an attempt to gain consent to search. Consent was refused and the residence was secured pending the outcome of this application for search warrant.

Officer Maloney arrived at the residence with the signed search warrant at 9:00 p.m. shortly after it was signed. Aware of the warrant's issuance, Officer Baudler and other officers immediately began searching the residence. Terri Burtton returned, entered the house, questioned Officer Baudler's search, and said "you guys are searching my house without a warrant." Officer Baudler informed her that the warrant was outside with Officer Maloney. Terri Burtton left the residence, stating, "No, I'm

-7-

telling my lawyer you're searching my house without a warrant." When Terri Burtton went back outside, Officer Maloney had arrived and gave her the search warrant; she then left.[6] At the time Terri Burtton received a copy of the warrant, the officers had not yet discovered any evidence. No officer searched the house for contraband prior to Officer Maloney telling Officer Baudler that the judge signed the search warrant. Officers Maloney and Baudler then searched the residence and found contraband, including narcotics.

## II. *Discussion*

On appeal, Burtton asserts that (1) the officers had neither probable cause nor reasonable suspicion to justify searching him following the traffic stop; (2) because his personal search was illegal, the home search pursuant to a warrant based on evidence acquired in the personal search was also illegal and unjustified; and (3) even if the initial search of Burtton's person was lawful, probable cause did not exist to justify his warrantless arrest for possession of marijuana with intent to distribute.

Burtton does not dispute (1) the legality of the traffic stop; (2) Officer Maloney observing Burtton and Cotton sitting in the back of the vehicle holding plastic cups suspected of containing alcohol; or (3) Officer Maloney detecting the odor of marijuana emanating from the vehicle. Additionally, he does not challenge as unlawful the officer's removal of Burtton from the vehicle at the outset of the stop. Instead, Burtton argues that the immediate search of his person following his removal from the vehicle by law enforcement was patently unlawful. According to Burtton, his possession of an open container of alcohol did not provide the officers with probable cause to arrest him because, under Nebraska law, an open container violation is *not*

---

[6]Terri Burtton testified that the officers had begun searching five to ten minutes prior to the arrival of Officer Maloney based on her observation that items in the kitchen had been moved. The magistrate judge credited Officer Baudler's testimony that the only search of the residence prior to the arrival of the search warrant was a protective sweep of the house to determine if other parties were present.

a misdemeanor crime but simply an infraction punishable by a maximum $100 fine; under Nebraska law, a person who commits an infraction must be issued a citation in lieu of arrest. Therefore, Burtton asserts that his open container, without more, did not provide probable cause to arrest him. Also, Burtton maintains that marijuana odor emanating from the vehicle did not provide sufficient evidence to justify a warrantless automobile search.

In response, the government contends that Burtton's argument that Nebraska law does not permit officers to arrest an individual for violation of the open container law is irrelevant for purposes of federal review of a search incident to arrest. According to the government, federal courts apply federal constitutional jurisprudence, not state or local law that may more narrowly constrain police conduct. Furthermore, the government argues that the scent of marijuana alone provided the officers with probable cause to search both the vehicle and its occupants.

Nebraska law provides that "[i]t is unlawful for any person in the passenger area of a motor vehicle to possess an open alcoholic beverage container while the motor vehicle is located in a public parking area or on any highway in this state." Neb. Rev. Stat. § 60-6, 211.08(2). A violation of the open container law "constitutes a traffic infraction under Neb. Rev. Stat. § 60-682 (Reissue 1998)." *State v. Low*, No. A-02-949, 2003 WL 22076360, at *3 (Neb. Ct. App. Sept. 9, 2003) (unpublished). In turn, § 29-435 of the Nebraska Revised Statutes provides that "'[e]xcept as provided in [Neb. Rev. Stat. §] 29-427 [(Reissue 1995)], for any offense classified as an infraction, a citation shall be issued in lieu of arrest or continued custody pursuant to [Neb. Rev. Stat. §§] 29-422 to 29-429 [(Reissue 1995 & Cum. Supp.2002)].'" *Id*.[7] Section 29-427 provides for certain exceptions in which a police officer may effectuate an arrest. *Id*. (quoting Neb. Rev. Stat. § 29-427). If "none of the exceptions

---

[7]In contrast to Nebraska state law, an Omaha City Ordinance describes a potential six-month jail sentence for an open container offense. Omaha Municipal Code §§ 15-14, 20-1, 1-10.

set out in § 29-427 apply," officers may only issue the individual a citation; they lack the authority to arrest the individual for the infraction. *Id*.

Although Nebraska law prohibits officers from arresting an individual for violating the open container law, "state law violations do not necessarily offend the Federal Constitution." *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995). "Thus, when a federal court must decide whether to exclude evidence obtained through an arrest, search, or seizure by state officers, the appropriate inquiry is whether the arrest, search, or seizure violated the Federal Constitution, not whether the arrest, search, or seizure violated state law." *Id*. As a general rule, we "d[o] not look to state statutes to assess the validity of an arrest, search, or seizure under the Fourth Amendment." *Id*. "Fourth Amendment analysis requires reference to state law in only a few situations. For example, to show the reasonableness of an inventory search, the Government must show officers complied with state standardized procedures." *Id*. (internal citation omitted). But Fourth Amendment analysis does not require "reference to an arrest's legality under state law." *Id*. "An arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause." *Id*. (holding that district court erroneously concluded that because state law did not authorize the defendant's arrest for operating a bicycle without a headlight, "cocaine could not be validly seized incident to [the defendant's] arrest").

We have previously held that officers were permitted to arrest a defendant without a warrant for violating a city's public drinking ordinance where the defendant committed the misdemeanor offense in the officers' presence. *United States v. Lewis*, 183 F.3d 791, 794 (8th Cir. 1999). We acknowledged the "well-established principle of the common law that a police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence." *Id*.

Here, Burtton's violation of the open container law constituted an "infraction," not a misdemeanor. Therefore, the question is whether the commission of an

"infraction" in the presence of officers supplied the officers with probable cause to arrest Burtton under the Fourth Amendment. "In a long line of cases, [the Supreme Court has] said that when an officer has probable cause to believe a person committed *even a minor crime in his presence*, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 128 S. Ct. 1598, 1604 (2008) (emphasis added) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Brinegar v. United States*, 338 U.S. 160, 164 (1949)).

In *Moore*, the defendant

> was arrested for the misdemeanor of driving with a suspended license despite the fact that in the circumstances of his case Virginia law authorized only the issuance of a summons. The Court held that although a state may provide more protection from warrantless arrests than the federal Constitution, that enhanced protection does not govern the scope of the protections afforded by the Fourth Amendment. *Id*. at 1606–07. If state laws could define the contours of the Fourth Amendment, its protections would "vary from place to place and from time to time." *Id*. at 1607 (quoting *Whren* [*v. United States*], 517 U.S. [806,] 815 [(1996)]).
>
> The Court noted that this rule was implicit in its earlier decisions. *Id*. at 1604–05. In *Whren*, the warrantless arrest based on probable cause was upheld even though plainclothes officers in unmarked cars were not generally permitted by the District of Columbia's police regulations to enforce traffic laws. 517 U.S. at 815, 116 S. Ct. 1769. "Just as a search authorized by state law may be an unreasonable one under [the Fourth Amendment], so may a search not expressly authorized by state law be justified as a constitutionally reasonable one." *Cooper v. California*, 386 U.S. 58, 61, 87 S. Ct. 788, 17 L. Ed.2d 730 (1967). In *Atwater*, the Court held that:
>
> > [T]he standard of probable cause "applie[s] to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations." If an officer has probable

-11-

cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

532 U.S. at 354, 121 S. Ct. 1536 (citation omitted) (quoting *Dunaway v. New York*, 442 U.S. 200, 208, 99 S. Ct. 2248, 60 L. Ed.2d 824 (1979)). Concluding its discussion of the officers' authority to make the arrest, the Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Moore*, 128 S. Ct. at 1607.

*Rose v. City of Mulberry, Ark.*, 533 F.3d 678, 680 (8th Cir. 2008) (holding that police officer had probable cause to arrest defendant for reckless driving, meaning that such arrest did not violate the Fourth Amendment, regardless of whether the officer was outside of his jurisdiction at the time of the arrest).

In light of *Moore*, "if an arrest is otherwise reasonable, the fact that it is not for an 'arrestable' offense does not make it unconstitutional." *Thomas v. City of Peoria*, 580 F.3d 633, 637 (7th Cir. 2009) (citing *Moore*, 128 S. Ct. at 1606–07). "[T]he Fourth Amendment does not forbid an arrest for a 'nonjailable' offense." *Id.* at 638 (rejecting argument of arrestee, who was stopped by a city police officer for a traffic violation and arrested after the officer mistakenly identified him as an individual who had nine unpaid parking tickets and a warrant for his arrest, that the city had an unconstitutional policy of arresting people for not paying their parking tickets).

Applying the rationale of *Moore*, *Bell*, and *Rose*, Burtton unquestionably committed a "minor crime"—violation of an open container law—in the presence of Officer Maloney when he was holding a 12-ounce plastic cup suspected of containing an alcoholic beverage in close proximity to a liquor bottle on the floor near Burtton.

As a result, Officer Maloney had probable cause under the Fourth Amendment to arrest Burtton and conduct a search incident to arrest. *See United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004) ("[I]f an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets."). Therefore, no redaction of evidence is required from the affidavit tendered in support of the search warrant application, and Burtton's *Mirandized* statement at the police station, admitting that there was marijuana residue at his home, is not the fruit of an illegal search.[8]

_____

[8]Because we hold that violation of the open container law provided Officer Maloney with probable cause to arrest Burtton, we need not consider whether the smell of marijuana emanating from the vehicle alone provided probable cause to justify the search of Burtton, as opposed to merely the search of the vehicle.

And, because probable cause existed to arrest Burtton and effectuate a search incident to arrest, we need not address Burtton's argument that, assuming the search was illegal, *Wong Sun v. United States*, 371 U.S. 471 (1963), requires the redaction of evidence obtained from the unlawful search from the affidavit tendered in support of the search warrant application.

Also, we need not address Burtton's argument that because the officers lacked probable cause to arrest him for possession of marijuana with intent to distribute, the resulting discovery of the marijuana in his sock and the currency in his pocket, as well as his subsequent statements concerning the source of the currency and his former address, must be redacted from the search warrant affidavit. As explained *supra*, Officer Maloney had probable cause to arrest, and did arrest, Burtton for violation of the open container law. Thus, the record demonstrates that Burtton was lawfully under arrest at the time that he was searched.

Finally, we note that Burtton *has not* argued on appeal—as he did before the district court—that his pre-*Miranda* statements were involuntarily made and followed an involuntary waiver of his *Miranda* rights. Burtton has not challenged the district court's conclusion that "[t]he evidence shows that Taft Burtton made voluntary unsolicited statements regarding the large amount of cash found on his person. Burtton called an officer over to make the statement." Likewise, Burtton has not

-13-

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

challenged the district court's finding that, post-*Miranda*, "Burtton signed a waiver of rights form that was read to him as he answered each question" and that "Burtton did not testify that his waiver was involuntary."