# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1505

_____

United States of America

*Plaintiff - Appellee*

v.

Curtis Lee Dale

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 15, 2017
Filed: March 19, 2018
[Unpublished]

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

A jury found Curtis Lee Dale guilty of conspiracy to manufacture, distribute, and possess with intent to distribute between 28 and 280 grams of cocaine base, 500 grams or more of a mixture and substance containing cocaine, and 100 grams or more of a mixture or substance containing heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851; possessing with intent to distribute those drugs in violation

of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851; and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced Dale to 300 months' imprisonment. Dale challenges the denial of an evidentiary hearing on his motion to suppress evidence, as well as the district court's drug-quantity calculation. We affirm.

Special Agent Jay Bump of the Drug Enforcement Administration began conducting surveillance on Dale in May 2016, after receiving information that Dale was selling crack cocaine. Agent Bump followed Dale to a self-storage facility in Davenport, Iowa, on at least four occasions. On May 27, 2016, Agent Bump served an administrative subpoena on the manager of the facility, who then provided a list of tenants. Two of Dale's associates rented storage units, including Unit G-15.

A warrant-authorized tracking device was installed on the sport utility vehicle (SUV) that Dale had been driving.[2] Data from the tracking device revealed that the SUV visited the storage facility twice on May 31, 2016, and traveled to the Chicago, Illinois, area on June 1, 2016. The SUV remained near Chicago for twenty minutes before beginning its return trip to Davenport. While the vehicle was in Illinois, a drug dog alerted to the presence of drugs as an officer walked it around Unit G-15.

The SUV proceeded directly to the self-storage facility, stopping at Unit G-15. Agent Bump observed Dale exit the SUV, open its rear hatch, and enter the unit. Dale left the area eight minutes later.

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

[2]In a *pro se* appellate brief, Dale challenges the tracking-device warrant. We discern no good cause for Dale's failure to raise this argument before trial, and thus decline to reach the merits. See Fed. R. Crim P. 12(c)(3); United States v. Anderson, 783 F.3d 727, 740-41 (8th Cir. 2015); see also United States v. Green, 691 F.3d 960, 966 (8th Cir. 2012) ("[P]ro se status alone does not constitute good cause.").

In response to Agent Bump's application, a federal magistrate judge issued warrants that authorized a search of Dale's residence, the SUV, and the two storage units. A deputy clerk of court testified that she renumbered the warrants by hand because the prosecutor had erroneously used the same number on each warrant.

Law enforcement officers searched Unit G-15 on the afternoon of June 2, 2016. The search revealed a wrapped kilogram of cocaine, additional cocaine in plastic bags, approximately five ounces of crack cocaine separated into five plastic baggies, more than 100 grams of heroin, packaging materials, and items used for conversion of powder cocaine into crack cocaine. Officers also found a duffel bag containing a loaded Ruger 9mm pistol, empty plastic kilogram-sized wrappings, discarded packaging material, plastic gloves, and plastic bags. An expert testified that the officers found "at least two and . . . likely three kilogram wrappers."

Officers took Dale into custody at a business establishment in Davenport and explained that drugs and a gun had been found in Unit G-15. A pat-down search revealed seven small packages of heroin in Dale's pocket. After explaining that the officers were heading to Dale's residence to search it, Agent Bump read Dale the Miranda warnings.

Dale elected to speak with the officers, telling Agent Bump that he had purchased one kilogram of cocaine for $39,500 from an individual in Chicago on June 1, 2016, and that he typically sold cocaine for $1,500 per ounce. Dale admitted that he had $20,000 "on the street" and that he had hidden $3,000 under a rug in his bedroom, which officers later found.

Sergeant Larry Hufford waited with Dale in a police vehicle while officers searched Dale's residence. Sergeant Hufford had worked at the Rock Island Police Department since 1994, and he knew Dale "pretty much [his] whole career." Sergeant Hufford reminisced with Dale about "a few incidents that happened in the

mid nineties," with Dale bragging that he used to purchase large amounts of crack cocaine in Chicago, transport it to the Quad Cities, and sell it for $800 per ounce. Dale complained about current drug prices, stating that he had to cook the cocaine into crack cocaine to make a profit, a process that yielded an extra two and a half ounces of product. Dale told Hufford that he sold the crack cocaine for $1,500 per ounce.

After Dale decided to represent himself, an assistant federal defender was appointed as standby counsel. Dale filed two *pro se* motions to suppress, which the district court denied without holding an evidentiary hearing. The jury found Dale guilty of the above-described charges. Although the government had argued that the conspiracy involved 280 grams or more of crack cocaine, the jury found that Dale was responsible for more than 28 grams but less than 280 grams.

The presentence report attributed one kilogram of crack cocaine and two kilograms of cocaine to Dale on the basis of the empty wrappers found in the duffel bag in Unit G-15. Over Dale's objection, the district court adopted the report's drug-quantity calculation.

Dale first argues that the district court abused its discretion in denying an evidentiary hearing on his motions to suppress evidence. United States v. Stevenson, 727 F.3d 826, 830 (8th Cir. 2013) (standard of review). "A district court must hold an evidentiary hearing only when the moving papers are sufficiently definite, specific, and detailed to establish a contested issue of fact." Id.; see United States v. Losing, 539 F.2d 1174, 1177 (8th Cir. 1976).

In his first motion, Dale claimed that the administrative subpoena was invalid and that the warrant to search Unit G-15 was illegal because the warrant was not addressed to Dale or the owner of the unit and because the addressee was not notified that a search warrant had issued. The motion failed, however, to allege any factual

basis for finding that Dale had a reasonable expectation of privacy in the list of individuals who rented storage units or in the units themselves. See United States v. McIntyre, 646 F.3d 1107, 1111 (8th Cir. 2011) (finding no reasonable expectation of privacy in electricity usage records); United States v. Ruiz-Zarate, 678 F.3d 683, 689 (8th Cir. 2012) (finding no reasonable expectation of privacy in an associate's vehicle that defendant "neither owned nor was near at the time of the traffic stop").

Dale's second motion challenged his warrantless arrest and sought to exclude his post-arrest statements. Dale claimed that the arrest was illegal because the officers did not have a warrant, but he did not assert any factual basis for finding that the officers lacked probable cause for the arrest. See United States v. Winarske, 715 F.3d 1063, 1066 (8th Cir. 2013) ("A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime."). Dale also claimed that although he had told the officers that he did not want to cooperate, they nonetheless "badgered" and "coerced" him to divulge his cell phone pass code and used "fundamentally unfair manners" to pressure him to provide information. The motion failed, however, to set forth factual allegations that might support his claim that the officers violated his Fifth Amendment right against self-incrimination. See United States v. Adams, 820 F.3d 317, 323 (8th Cir. 2016) ("To adequately invoke [the right to remain silent] and effectively cut off questioning, a suspect must indicate a clear, consistent expression of a desire to remain silent." (quoting United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995))); United States v. Williams, 760 F.3d 811, 815 (8th Cir. 2014) ("Statements . . . are involuntary where an individual's will is overborne by coercive police activity and he loses the capacity for self-determination.").

Finally, Dale claimed that "three of the search warr[a]nts [were] altered." But he did not allege any details that would enable the court to conclude that the alterations rendered the search warrants invalid. Dale also reiterated his challenge to the search of Unit G-15, claiming that Agent Bump did not see Dale enter the unit and

that Agent Bump "could not see if anything illegal was going on" within the unit. But again, Dale failed to allege facts that might have allowed the court to find that he had a reasonable expectation of privacy in the unit. We thus conclude that the district court did not err in not holding an evidentiary hearing on Dale's motions.

We also reject Dale's argument that the district court did not adequately reconsider the motions to suppress at the close of the evidence. The court gave Dale the opportunity to present argument and additional evidence. Dale decided to rely upon the evidence that had been presented at trial, and the district court did not err in failing to *sua sponte* order a separate evidentiary hearing.

Dale contends that the district court erred in finding him responsible for a quantity of crack cocaine greater than the quantity range found by the jury. While the jury found beyond a reasonable doubt that Dale was responsible for between 28 and 280 grams of crack cocaine, the government presented sufficient evidence at trial to permit the district court to find by a preponderance of the evidence that Dale was responsible for more than 280 grams of crack cocaine. See United States v. Radtke, 415 F.3d 826, 844 (8th Cir. 2005) (concluding that after jury's acquittal, the district court was "free, indeed obliged, to consider whether [the defendant's] involvement had been proved by a preponderance of the evidence"). The government established that there were three empty kilogram wrappers found in Unit G-15, that Dale had admitted that he had converted a kilogram of cocaine into crack cocaine, and that Unit G-15 contained crack cocaine and tools used in the conversion of powder cocaine into crack cocaine. Moreover, two customers testified that they had purchased crack cocaine from Dale. In light of this evidence, we conclude that the district court's drug-quantity finding was not clearly erroneous. See United States v. Bradley, 643 F.3d 1121, 1126 (8th Cir. 2011) (standard of review).

The judgment is affirmed.

_____

-6-